IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

UNITED STATES OF AMERICA

                Plaintiff

-vs-

FRANCISCO PATINO

                Defendant

---

: CASE NO. 1:02 CR 41-004

: SENTENCING MEMORANDUM

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 27 March 2006, Francisco Patino appeared with his counsel, Jaime Serrat, for re-sentencing on the crime to which he pled guilty before this Court on 14 April 2003 — count one of an indictment for conspiracy to possess with intent to distribute and distribution of pseudoephedrine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Ronald Bakeman, Assistant United States Attorney, was present for the government. Also present was Art Bowker, U. S. Probation Officer, who had prepared

the Pre-sentence Investigation Report ("PSR") and its revisions up to, and including the last revised report submitted on 22 March 2006.

I.     **Background**

Mr. Patino participated in this conspiracy as a courier when, on four separate occasions between the Summer of 2000 and 4 November 2001, he facilitated the purchase of large quantities of pseudoephedrine "Mini-Thins"[1] from co-conspirator Mohammed Hasan with monies provided by Mr. Patino's uncle, Pedro Mendoza. Mr. Hasan obtained the pseudoephedrine in Ohio and drove, with the material, to California where he met with Mr. Patino and exchanged the drugs for cash. That transaction recurred three times in 2000 and, once again, on 3-4 November 2001. On those occasions, when necessary, Mr. Patino also served as a translator between his uncle and co-conspirator Mr. Hasan. Also involved in this conspiracy, and sentenced before this Court, were Samuel Love and Osma Samhoury. In the fourth and final trip to meet with Mr. Patino, Mr. Hasan directed Mr. Love to drive the pseudoephedrine from Ohio to Reno, Nevada where Mr. Hasan picked up the drugs and brought them into California and to his meeting with Mr. Patino. Mr. Samhoury also assisted Mr. Hasan in the conspiracy by repackaging the pseudoephedrine and, in one instance, transporting the drugs by vehicle to Reno, Nevada. On three occasions, Mr. Samhoury assisted Mr. Hasan by paying the rent on a storage facility housing some of the pseudoephedrine, and cleaning the storage facility of the drug packaging.

---

[1]"Mini-Thins" are pseudoephedrine cold tablets.

On 14 April 2003, Mr. Patino pled guilty to Count One of the indictment which charged that he "did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree to manufacture, and possess with intent to manufacture, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance." At Mr. Patino's sentencing hearing, the Court applied the 2001 Guidelines to determine the defendant's base offense level of thirty-eight. The Court found Mr. Patino entitled to a two-level reduction for specific offense characteristics pursuant to U.S.S.G. § 2D1.1(b)(6), a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) - (b), and a two-level reduction pursuant to the safety-valve provision of U.S.S.G. § 5C1.2. Coupled with Mr. Patino's criminal history category of I, his sentencing range pursuant to the 2001 Guidelines was from 108 months to 135 months imprisonment. Mr. Patino received a sentence of 108 months' imprisonment and three years' supervised release. Mr. Patino timely appealed.

Mr. Patino now appears before this Court for re-sentencing pursuant to the Sixth Circuit's decision in United States v. Patino, 150 Fed. Appx. 453, 2005 WL 2445942 (6th Cir. 5 October 2005). In that decision, the Circuit Court relied upon the post-Booker jurisprudential landscape, and its own decision in United States v. Barnett, 398 F.3d 516 (6th Cir. 2005), to recognize that, "if the district court in this case had not been bound by the range prescribed in the Guidelines, [Patino] may have received a lower sentence." United States v. Patino, at *3, (citing Barnett, 398 F.3d at 528). Again, following Barnett, the Circuit Court did not find "clear and specific evidence that the district court would not have, in any event sentenced the defendant to a lower sentence

under the advisory Guidelines regime." United States v. Patino, at *3 (citing Barnett at 529).

## II. Analysis

The Court returns to Mr. Patino's sentencing with a more discretionary hand, given Booker and its progeny. Accordingly, at Mr. Patino's re-sentencing, the Court found persuasive the application of the 2000 Guidelines Manual. Not only does Mr. Patino's plea agreement with the government contemplate the application of the 2000 Guidelines, the vast bulk of the defendant's criminal activities occurred prior to 1 November 2001, the effective date of the 2001 Guidelines Manual. The government maintains that, pursuant to USSG 1B1.11(b), the Court should use the Guideline Manual in effect on the date the offense was committed.[2] Because the defendant's fourth and final trip in this conspiracy occurred on 3-4 November 2001, the government suggests the Court must use the 2001 Guidelines in assessing the length of Mr. Patino's sentence and such an application does not, pursuant to USSG 1B1.11(b), violate the Ex Post Facto Clause of the United States Constitution.

The Court finds no disagreement with the government's argument regarding the application of the 2001 Guidelines, so far as it maintains that such application does not involve a violation of the ex post facto clause. The 2001 Guidelines establish a base

---

[2] Generally, the Court must apply the version of the guidelines in place at the time of sentencing, but if the application of that version violates the Ex Post Facto Clause, U.S.S.G. § 1B1.11(b)(1) requires the Court "shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." See United States v. Davis, 397 F.3d 340, 346 (6th Cir.2005). An ex post facto violation is implicated where the new guidelines version "changes the legal consequences of acts completed before its effective date." Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987)

offense level of thirty-eight for Mr. Patino's violations, the last of which occurred after the effective start of the 2001 Guidelines on 1 November 2001. Consequently, the government may, without running afoul of Ex Post Facto concerns, advocate for the application of the 2001 Guidelines. Yet, while Mr. Patino is not *entitled* to the application of the 2000 Guidelines, which would establish a base offense level of thirty for his violations, nevertheless, the Court considers such application proper. Accordingly, because the parties' plea agreement contemplates just such a possible application, and because the vast bulk of Mr. Patino's illegal conduct occurred under the auspices of the 2000 Guidelines, the Court takes as an advisory starting point, the 2000 Guidelines.[3] See United States v. Cseplo, 42 F.3d 360, 362 (6th Cir. 1994); United States v. Lacefield, 2005 WL 1869668, 146 Fed. Appx. 15, 21 (6th Cir. 4 August 2005).

In this instance, the 2000 Guidelines advise the imposition of a sentence of between forty-six and fifty-seven months' incarceration for Mr. Patino. See also 18 U.S.C. § 3553(a)(4). This calculation is made as follows: (1) the base offense level for conspiracy to possess with intent to distribute and distribution of 15 kilograms of pseudoephedrine is 30, pursuant to the table in U.S.S.G. § 2D1.11(d); (2) Mr. Patino

---

[3]Where, as here, Mr. Patino's violations occurred under the effective auspices of both the 2000 and 2001 Guidelines, USSG 1B1.11(b), enables the Court to utilize the more stringent offense levels contemplated in the 2001 Guidelines without violating Mr. Patino's rights pursuant to the ex post facto clause. Whether this statute requires the Court to apply the 2001 and not the 2000 Guidelines to Mr. Patino's sentencing is a question settled by the United States Supreme Court in United States v. Booker, 543, U.S. 220 (2005) when it held that the Federal Sentencing Guideline scheme as it then existed violated the Sixth Amendment. Rather than invalidate the Guidelines entirely, the Booker Court severed the statutory provisions making the application of the Guidelines mandatory. Id. At 756-57. The result was to make the Guidelines effectively advisory.

qualified for the "safety valve" exception to the statutory mandatory minimum and for a two-level reduction pursuant to U.S.S.G. §§ 5C1.2 and 2D1.1(b)(6), bringing him to an offense level of 28; (3) Mr. Patino qualified for a three-level reduction for acceptance of responsibility, bringing his offense level to 25; (4) Mr. Patino qualified for a two-level downward departure, pursuant to U.S.S.G. § 5K2.0, in exchange for not contesting deportation, thus arriving at a final offense level of 23; and (4) Mr. Patino has a criminal history category of I. Thus Mr. Patino faces a Guideline sentence of between forty-six and fifty-seven months' incarceration.

Pursuant to Booker, after the Court consults the advisory Guidelines, the Court must also consider the factors listed in 18 U.S.C. § 3553(a), as a means for informing the Court's discretion in fashioning an appropriate sentence under the facts and circumstances of each case. Section 3553(a) requires a sentencing court to impose a sentence sufficient, but not greater than necessary, to accomplish the following:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> 18 U.S.C. § 3552(a)(2).

In crafting a sentence designed to accomplish those goals, in this specific instance, the Court has considered the nature and circumstances of Mr. Patino's offense, his history and characteristics, the kinds of sentences and the sentencing

range established under the Guidelines, and the need to avoid unwarranted sentencing disparities among the co-defendants in this indictment. 18 U.S.C. § 3553(a)(1), (4), (6).

The Court is quite familiar with the violations, history and characteristics of each of the four indicted conspirators in this matter as each came before this bench for sentencing. The Court recognized the central role played by Mr. Hasan in this endeavor, and also recognized the strength of his cooperation with the government when it imposed a sentence of 87 months' incarceration to be followed by 10 years' supervised release. Mr. Samhoury received a sentence of 37 months' incarceration and 5 years' supervised release for his role in the conspiracy, reflecting the limited nature of his involvement and his cooperation with the government. Finally, the Court sentenced Mr. Love to a term of 41 months' incarceration with 2 years' supervised release, also reflecting the limited nature of his involvement and his cooperation with the government.

The Court balances the equities of Mr. Patino's role in facilitating the very exchange and commerce of the drugs in question, the length of time over which Mr. Patino remained involved in the endeavor, the limited nature of the defendant's cooperation with the government, and the significance of Mr. Patino's participation relative to his co-defendants. As a result of this thorough consideration, the Court arrives at a term of imprisonment for Mr. Patino of seventy months' incarceration to be followed by three years' supervised release.

Accordingly, pursuant to the threshold considerations of Section 3553(a), the Court finds a sentence of seventy months' incarceration and three years' supervision is sufficient, but not greater than necessary to reflect the seriousness of Mr. Patino's

offense, will meet the objectives of just punishment and improve Mr. Patino's conduct and condition. In addition, the Court considers the serious nature and circumstances of the offense and the history of the defendant in propounding the seventy month term as consonant with the conditions of this case in consideration of the sentences afforded Mr. Patino's co-defendants by this Court. Finally, that period of incarceration will afford adequate deterrence to Mr. Patino's conduct and, thereby, protect the public.

    IT IS SO ORDERED

                          /s/Lesley Wells
                          UNITED STATES DISTRICT JUDGE